# SUPREME COURT.

JOHN McArdle agt. Danford N. Barney and others.

*Removal of a receiver appointed on the dissolution of an express company, on the ground of interest, if not collusion, and the appointment of a disinterested and proper person in his place.*

Prior to the 1st of November, 1866, Wells, Fargo & Company were a joint stock association, formed principally for carrying on the express business, with a capital stock of 20,000 shares, divided into 100 shares each. The par value at that time was $100 per share, and its actual market value was $285 per share.

On the said 1st day of November, 1866, the then trustees of said company, who are defendants in this action, by a unanimous vote of the trustees, dissolved the corporation.

Immediately, upon its dissolution, the said trustees transferred to a rival company, then known by the name of the Holladay Overland Mail and Express Company, and now known, and a party to this action, as Wells, Fargo & Company, the name, good-will and territorial rights and other personal property of the dissolved association, and received in payment therefor $4,000,000 in stock (at its par value) of the defendant, Wells, Fargo & Company. Besides the property thus transferred, Wells, Fargo & Company held certain other property of considerable value, for the benefit of its former shareholders.

The plaintiff in this action was the owner, at the time of the dissolution aforesaid, of 100 shares of the stock of said association of Wells, Fargo & Company, and objected to the dissolution and sale as aforesaid, at the time it was made.

On the 16th day of February, 1870, the plaintiff commenced this action, for his own benefit and all other parties who were interested and might become parties to the action, for the purpose of obtaining relief on account of the alleged illegal sale to a rival company, and to obtain a receiver of the assets of the dissolved company, who should distribute the same to the stockholders.

In May, 1871, the cause was referred to a referee, to hear and decide. After a protracted hearing and trial, the referee made his report, by which he found: 1st. That the action of the trustees in dissolving the

VOL. L    13

McArdle agt. Barney.

association was a legal exercise of their powers, and in all respects valid. 2d. That it was the duty of the trustees, upon such dissolution, with due diligence, to convert the assets into money, and to distribute the same among the shareholders, and to the plaintiff, at the rate of 100–20,000 thereof. 3d. That the trustees, by reason of having sold a portion of the assets to the defendant, Wells, Fargo & Company, at private sale, without having given any notice thereof, and having taken stock in payment therefor, violated their duty as trustees, and are liable to the plaintiff for the value thereof. 4th. That the value of the assets of said association was $285 per share, and that plaintiff's 100 shares therein were worth $28,500. 5th. That the portion of the assets so sold to the defendants, Wells, Fargo & Company, were worth $200 on each share of the old company thus dissolved. 6th. That the plaintiff is entitled to judgment against the trustees (naming them) for $20,000, with interest from November, 1866, with costs;- and that a receiver of the assets of Wells, Fargo & Company be appointed, with the usual powers and duties in such cases.

An application was subsequently made at special term for the appointment of a receiver, in pursuance of this judgment, which was met and resisted by the defendants, Wells, Fargo & Company, on the ground that a receiver had already been appointed, in pursuance of a judgment in an action commenced after the commencement of this action, but final judgment therein rendered before this action was terminated, by a shareholder of the original association, on behalf of the association, against the trustees of the dividend fund of Wells, Fargo & Company, the plaintiff therein having given consent to the sale of the property to the new company, but charged that the trustees of the old company had been guilty of fraud and illegal conduct since the sale, and that a receiver should be appointed, &c., whereupon the issue in that cause was, by consent, referred to a referee, who, after a hearing, made his report, by which the whole conduct of the trustees, the defendants, was approved, and they absolved from all liability to any stockholder, and large allowances made to one of the trustees, for services, who was, by the judgment and decree made on filing the report of the referee, appointed receiver of the assets of the company, with the usual powers and duties of receivers in such cases.

Of the existence of this second suit, the plaintiff, McArdle, had no notice or knowledge whatever until this motion. Upon inspection of the proceedings in this second suit, and from the evidence produced on this motion, it was apparent to the court—laying aside the strong presumption of collusion which attached to that second suit—that the trustee who had been appointed receiver in that suit was, from interest and feelings, adverse to the plaintiff in this action, and, for other reasons, an improper person to act as receiver in administering the affairs of such dissolved corporation, and should be removed, and the person named as

McArdle agt. Barney.

receiver on this motion appointed; standing, as he appeared to, indifferent between the parties, would most likely execute the duties of receiver fairly, impartially and faithfully.

*Albany Special Term, April,* 1874.

*N. C. Moak & A. W. Frothingham,* for plaintiff.

*Samuel Hand,* for defendants.

WESTBROOK, *J.* — The plaintiff was the owner, on the 1st day of November, 1866, of 100 shares of stock, in the joint stock company, known by the name of Wells, Fargo & Company. The par value of the stock on that day, was $100 per share, and its actual value in market was $285 per share. The business of the company was expressage and carrying in California, Oregon, and the Western territories, and also banking, &c.

On the same 1st day of November, 1866, the then trustees of Wells, Fargo & Company, who are defendants in this action, by a unanimous vote of the trustees, dissolved the corporation. This they were empowered to do by the articles of association, unless two-thirds of the stockholders objected, such dissolution making the trustees holders of the assets of the corporation for the benefit of its stockholders.

Immediately upon its dissolution (and such dissolution was to enable them so to do) the said trustees, the plaintiff objecting, transferred to a rival company, then known by the name of the Holladay Overland Mail and Express Company, and now known and a party to this action by the name of Wells, Fargo & Company, the name, good-will and territorial rights and other personal property of the said dissolved association, and received in payment therefor $4,000,000 in stock (at its par value) of the defendants, Wells, Fargo & Company. The entire stock of the dissolved corporation, on the day of such dissolution, consisted of 20,000 shares of the par value, and actual value hereinbefore stated. Besides the property

transferred to Wells, Fargo & Company (formerly Holladay Overland Mail and Express Company), the trustees of the dissolved corporation (Wells, Fargo & Company) held certain other property of considerable value for the benefit of its former shareholders.

This action was commenced on the 16th day of February, 1870, for the benefit of the plaintiff, and all other parties who were interested and might become parties to the action, for the purpose of obtaining relief on account of the alleged illegal sale to a rival corporation, and to obtain a receiver of the assets of the dissolved company, who should distribute the same to the stockholders. Issue having been joined therein it was, in May 1871, referred to Isaac Edwards of the city of Albany, a counselor of this court, and a very competent referee, to hear and decide. The taking of proof in the cause commenced in July, 1871, and was continued at intervals until December, 1872. It was summed up and submitted to the referee in January, 1873, who (his time having been extended) made a report March 29th, 1873. The conclusions which the referee reached are:

1. That the action of the trustees, in dissolving the joint stock association of Wells, Fargo & Company, on the 1st day of November, 1866, was a legal exercise of their powers and in all respects valid.

2. That it was the duty of the trustees of the assets of the said company to proceed, on such dissolution, with due diligence and convert the assets of the company into money, and distribute the same among the stockholders and to the plaintiff at the rate of $\frac{100}{20000}$ thereof.

3. That the said trustees, by reason of having sold a portion of said assets to the defendants Wells, Fargo & Co., at private sale, without having given any notice thereof, and having taken stock in payment therefor, violated their duties as such trustees, and are liable to the plaintiff for the value thereof.

4. That the value of the assets of said joint stock associa-

McArdle agt. Barney.

tion was $285 per share, and that plaintiff's 100 shares thereof and therein were worth $28,500.

5. That the portion of the assets of the said company so sold and transferred to the defendant, the new Wells, Fargo & Co., were worth $200 on each share of the old company, so dissolved.

6. That the plaintiff is entitled to judgment against the defendants Ashbel H. Barney, Nathan H. Stockwell, Henry Wells, Edwin B. Morgan, Johnston Livingston, for $20,000, with interest thereon from November 1, 1866, with costs, and that a receiver of the assets of said old association of Wells, Fargo & Co., so dissolved, for the benefit of the stockholders of said association, and all others interested, be appointed, with the usual powers and duties of receivers in like cases.

A motion was made at a previous special term of this court (judge LEARNED presiding) to appoint a receiver in conformity with the report of the referee. That motion was resisted by the defendants upon the ground, that in a suit begun in this court in the city of New York, by one Ann E. Wilson, on behalf of the association of Wells, Fargo & Co. against Danforth N. Barney and others, trustees of the dividend fund of the Wells, Fargo & Co. joint-stock association, such proceedings were had that, by the judgment of this court in the first judicial district, Ashbel H. Barney, one of the defendants in this action, had been appointed receiver for the purpose of distributing the assets of the late association among its former shareholders. The court then ordered a reference to Isaac Lawson, to determine who was a proper person to be receiver of the old Wells, Fargo & Co. association, and whether said Barney should be removed from his office as receiver and another appointed in his stead. The referee having reported that said Barney should be removed and Abraham V. Dewitt appointed, the question is upon such removal and new appointment.

The hearing before the referee was on notice to the

receiver, and the evidence taken is returned for our guidance. From such evidence, then taken, it appears that the Wilson case was commenced subsequent to this one. The plaintiff therein was one of the stockholders of the original company who gave consent to the sale of the property to the new, but claimed by the complaint that the trustees of the old association had been guilty of fraudulent and illegal conduct since the sale, and that a receiver should be appointed to distribute its assets. This cause being at issue it was referred, by consent, to Albert Stickney to hear and decide. The report of the referee in that action bears date February 5th, 1873, and judgment was entered thereon on the 7th day of February, 1873, after this cause, which was older in its beginning, had been submitted to its referee for a decision, but before such decision was announced.

By the judgment in the Wilson case the whole conduct of the defendants was approved, the trustees absolved from liability to any stockholder, large allowances made to Mr. Barney for services, and he (Barney) appointed receiver. To this suit Mr. McArdle was not made a party, nor was he cognizant in any way of the proceedings. The existence of this prior action was not communicated to the court which rendered the judgment in the Wilson case; and what is more singular still, the plaintiff in that action and her husband, who acted as her agent in regard to it, had no knowledge or notice of the reference or of the judgment which had been obtained therein. One of the attorneys of the plaintiff (Mrs. Wilson) was also examined, but threw very little light upon the transaction, he claiming that his partner, who was in Europe, had conducted it.

As already stated, of the existence of that suit of Mrs. Wilson, the plaintiff (McArdle) had no knowledge. If, on his being heard and with a full knowledge of the facts, a competent court had pronounced the judgment and made the appointment of Mr. Barney, well understood principles of law as well as judicial comity would forbid the appoint-

McArdle agt. Barney.

ment of a new receiver. Whilst the judgment in the Wilson case is, on its face, formal and regular, still the circumstances attending it are so suspicious that I strongly think it was collusive and friendly to avoid the judgment in this case. Undoubtedly, the learned and respected judge who granted the decree acted rightly upon the light given to him, but I do not see how the same court, though held by another judge, with a more full and perfect knowledge of all the circumstances, and after a full hearing of all the parties, is guilty of any disrespect to him, if it sees fit to appoint a new receiver. That proceeding was *ex parte* so far as this plaintiff is concerned, and as this suit was the older in point of time and was proceeding in regular form to judgment when the other decree was rendered, no volunteer seeking to interfere with proceedings in another district can possibly be unsuspected. Indeed, I am well satisfied that if the attention of judge Davis had been drawn to this prior suit then pending, actually submitted and awaiting decision, that decree, without notice to this plaintiff, would not have been made.

No possible disrespect, then, or breach of judicial comity, can be presumed, if this court fairly examines and considers the propriety of Mr. Barney being the receiver. It is true the plaintiff has a personal judgment for part of the value of his stock in the old company, but he has also an interest in the remaining property to a considerable amount. With this controversy existing between him and these defendants, he is entitled to a receiver who shall, at least, be indifferent between the parties. It is neither fair or just to the plaintiff that he who is to collect and distribute the assets of the dissolved association should be the very person whose feelings are imbittered against him by a suit, and whose interests are directly antagonistic. Besides, the accounts, actions, and conduct of this very Mr. Barney, as trustee, are to be examined and passed upon, and they should be so examined and passed upon by an indifferent person,

who can have access to every paper, voucher and document, which will shed light thereon. It may be necessary to institute suits against Mr. Barney for illegal or improper conduct, and surely he (Barney) ought not to be plaintiff therein. It is no answer to this argument to say that if Mr. Barney fails to fulfill his trust honestly, that an action will lie against him and his surety. No party should be subjected needlessly to litigation, and without a thorough insight into the business and transactions of the old association, which a possession of its books, documents and papers will give, it would be impossible to conduct a suit to a successful issue. Full possession of all the property of the late company will certainly enable Mr. Barney, if so disposed, to work wrong to the plaintiff, of the existence of which he will be wholly ignorant.

Laying out of view, however, all suspicions of collusion in the Wilson suit and judgment, can this appointment be proper? We need not to impute any dishonest motives to Mr. Barney. It is only necessary to assume that he is human with the failings of our nature, and so assuming it is but reasonable to suppose that he will prefer his own interests to those of another. Our statutes disqualifying certain persons from acting as judges, jurors, and in other capacities proceed upon this ground. His judgment, if he continues in office, will often be tasked to consider what should be done, and whether this thing or that thing will be best for him. His judgment and conscience should not be biased by self-interest, nor tempted to wrong by feeling or passion. Mr. Dewitt, the person recommended, is, on the other hand, every way qualified — indifferent between the parties — and will certainly do justice to all, having no motive to serve one party more than the other.

My conclusion is that Mr. Barney should be removed and Mr. Dewitt appointed, as recommended by the referee.